IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT KANSAS CITY

| | |
|---|---|
| RYAN MCCOMBS-ALLEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.: |
| v. ) | Division: |
| ) | |
| DREAM TEAM PIZZA, LLC ) | |
| d/b/a DOMINO'S, ) | |
| ) | REQUEST FOR JURY TRIAL |
| Defendant. ) | |

Serve Resident Agent:
Jamie Poulsen
244 W. Mill St., Suite 104
Liberty, Missouri 64068

**PETITION FOR DAMAGES**

COMES NOW Plaintiff, Ryan McCombs-Allen, and for his cause of action against the above-named Defendant, alleges and states as follows:

1. Plaintiff is a resident of Kansas.

2. Defendant Dream Team Pizza, LLC d/b/a Domino's, is a Missouri limited-liability company properly registered and doing business in the state of Missouri. Defendant can be served through its Registered Agent, Jamie Poulsen, at 244 W. Mill St., Suite 104, Liberty, Missouri 64068.

3. Plaintiff was hired by Defendant in Jackson County, Missouri.

4. Plaintiff was hired to work as General Manager for Defendant's store in Olathe, Kansas, and he worked primarily at that location.

5. Plaintiff was supervised by management stationed in Defendant's home offices in Kansas City, Jackson County, Missouri.

6. The decision to discharge Plaintiff was made in Kansas City, Jackson

County, Missouri.

7. Relevant employment records to Plaintiff's claims—including but not limited to dates of Plaintiff's employment, disciplinary records, and performance records—are kept by Defendant in Kansas City, Jackson County, Missouri.

8. These facts make jurisdiction and venue of this case proper in Jackson County, Missouri pursuant to, *inter alia*, 42 U.S.C. § 2000e-5(f)(3).

9. At all relevant times, Defendant employed more than fifteen people and was engaged in an industry affecting commerce, specifically, operating pizza restaurants in multiple states, including both Missouri and Kansas.

## FACTS COMMON TO ALL COUNTS

10. Plaintiff began working for Defendant in September 2020.

11. Plaintiff was hired to work as a General Manager for Defendant's store in Olathe, Kansas.

12. Plaintiff was responsible for running the day-to-day operations of the store, including supervising employees.

13. Plaintiff was supervised by Lisa l/n/u, the District Manager, and Joey l/n/u, the Vice President of Defendant.

14. Due to COVID-19, Defendant had to take extreme precautions when preparing and serving food to ensure the safety of its customers and employees.

15. These protocols included, among other things, that employees report any signs of illness and not report to work if they were experiencing any COVID-like symptoms.

16. As the manager, it was Plaintiff's responsibility to keep an eye on his staff to

better ensure that no one was working while ill.

17. On January 24, 2021, Plaintiff reported to work.

18. While at work, Plaintiff began to feel ill.

19. At first, Plaintiff was suffering from a runny nose and light-headedness.

20. Plaintiff spoke to Lisa and notified her that he felt ill.

21. Lisa told Plaintiff to wait and see whether his illness developed any further.

22. Upon Lisa's orders, Plaintiff continued to work.

23. Plaintiff developed a headache, worsening nausea, dizziness, a fever, and a burning sensation in his chest and lungs.

24. Plaintiff began to feel so sick he had to lie down.

25. Lisa arrived at the store around 3 pm that day.

26. Plaintiff relayed his new symptoms to her.

27. Plaintiff was visibly ill, including sweating and sensitivity to light.

28. Plaintiff insisted that he needed to leave work immediately.

29. Lisa told Plaintiff to "hang in there" until Ronnie, an assistant manager, arrived at 5 pm.

30. Lisa left the store.

31. Plaintiff notified his staff that Ronnie was coming to relieve him and that he would be in the back of the store if anything came up before Ronnie arrived.

32. Plaintiff then went back lying down and waited for Ronnie.

33. Ronnie arrived later, and Plaintiff immediately left the store.

34. Plaintiff would ultimately be diagnosed with COVID-19.

35. The next day, Plaintiff texted Lisa to let her know that he would not be

coming into work because he still felt very sick.

36. Despite being extremely sick, however, Plaintiff did all he could to find coverage for the store.

37. Plaintiff kept Lisa apprised of his efforts to find someone to cover.

38. As of 11 am that day, Plaintiff was unable to find a driver to cover the store.

39. Plaintiff notified Lisa of this via text.

40. Shortly thereafter, Plaintiff received a call from Joey.

41. Joey told Plaintiff that there had been a "disaster" at Plaintiff's store the night prior and that as a result, Plaintiff was terminated, effective immediately.

42. On January 29, 2021, Plaintiff received his test results indicating that he had tested positive for COVID-19.

43. Plaintiff notified Lisa and Joey that he tested positive.

44. Plaintiff suggested that they notify the staff who he had worked with so they could get tested as well.

45. Joey responded to Plaintiff saying, "You don't work here anymore."

46. Defendant never informed the staff that they had been exposed to COVID-19.

47. All actions or inactions of or by Defendant occurred by or through its agents, servants, or employees, acting within the course and scope of their employment, as set forth herein.

## COUNT I – DISABILITY DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AS AMENDED

48. Plaintiff incorporates by reference the allegations contained in paragraphs 1

through 49 of his Petition, as though fully state herein.

49. Plaintiff suffered from a physical impairment.

50. This physical impairment limited Plaintiff from life activities, including the ability to breath, think, walk, lift, bend, maintain employment, and freely travel.

51. This physical impairment limited the operation of major bodily functions, including respiratory functions.

52. Defendant further regarded Plaintiff as suffering a physical impairment that limited Plaintiff from life activities, including the ability to maintain employment.

53. In reality, Plaintiff could at all times perform the essential job functions of his position with or without reasonable accommodations, including time off to recover.

54. Therefore, Plaintiff had a "disability" under 42 U.S.C. § 12102(1).

55. Defendant took adverse employment actions against Plaintiff, including but not limited to, denying Plaintiff a reasonable accommodation of time off work and discharging Plaintiff from employment.

56. The motivating factor in these adverse employment actions was Plaintiff's disability, including disability wrongfully attributed to Plaintiff by Defendant.

57. Defendant's conduct was willful and wanton and demonstrates malice.

58. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered irreparable injury, including past and future pecuniary losses, emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, reduced employment opportunities, and will continue to suffer the same unless and until this Court grants relief.

59. On or about June 3, 2021, Plaintiff duly filed a timely Charge of

Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that Defendant engaged in the discriminatory actions that are being raised in this lawsuit, or alternatively, all conduct alleged herein would have arisen from the investigation of such Charge of Discrimination.

60. A Notice of Right-to-Sue letter, dated June 22, 2021, has been issued, and this action is being brought within ninety (90) days from the issuance of such Right-to-Sue letter from the EEOC.

61. Plaintiff has fulfilled all conditions precedent to the bringing of his claims and has duly exhausted all administrative procedures prior to instituting this lawsuit in accordance with the law.

62. Plaintiff is also entitled to recover all of his costs, expenses, expert witness fees, and attorneys' fees incurred in this matter.

WHEREFORE, Plaintiff prays for judgment against Defendant for compensatory damages in an amount exceeding $75,000.00; for punitive damages, if deemed appropriate by the Court at a later time; for Plaintiff's costs and expenses incurred herein; for attorneys' fees; and for such other and further consideration and relief as the Court may deem just and equitable.

### COUNT II –
### WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY UNDER KANSAS LAW

63. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 64 of his Petition, as though fully stated herein.

64. Plaintiff made good-faith complaints about Defendant's violations of safety protocols related to COVID-19, including those imposed by the State of Kansas (Executive

Electronically Filed - Jackson - Kansas City - August 27, 2021 - 02:51 PM

Electronically Filed - Jackson - Kansas City - August 27, 2021 - 02:51 PM

Order No. 20-68; K.S.A. § 48-924; 48-925(b)-(c)) and the Federal Government (Occupational Safety and Health Act, 29 U.S.C. § 654(a)).

65. Plaintiff's complaints were not motivated by malice, spite, jealousy, or personal gain.

66. These complaints were made to management members of Defendant.

67. Plaintiff further undertook actions which were required by law.

68. This included leaving work and staying home from work due to symptoms of COVID-19, as required by the State of Kansas (Executive Order No. 20-68; K.S.A. § 48-924; 48-925(b)-(c)) and the Federal Government (Occupational Safety and Health Act, 29 U.S.C. § 654(a)).

69. Defendant took adverse employment actions against Plaintiff, including but not limited to discharging Plaintiff from employment.

70. Defendant's adverse employment actions taken against Plaintiff were based upon, and directly related to, Plaintiff's complaints of actions prohibited by law and/or undertaking of actions required by these laws, as stated above.

71. Defendant's adverse employment actions against Plaintiff violate public policy clearly declared by the Courts and the Legislature.

72. These laws pertain to public health, safety, and general welfare of citizens of Kansas and the United States.

73. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered irreparable injury, including past and future pecuniary losses, emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, reduced employment opportunities, and will continue to suffer the same unless and until this Court

grants relief.

74. Defendant acted toward Plaintiff with willful conduct, wanton conduct, and/or malice.

WHEREFORE, Plaintiff prays for judgment against Defendant in an amount in excess of $75,000.00; for punitive damages, if deemed appropriate by the Court at a later time; for the costs of this action, and for such other and further consideration and relief as the Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff requests a trial by jury in the Circuit Court of Jackson County, Missouri at Kansas City, on all accounts and allegations of wrongful conduct alleged in this Petition.

Respectfully submitted,

 */s/ Daniel L. Doyle*
Daniel L. Doyle, MO Bar No. 37305
Robert A. Bruce, MO Bar No. 69985
DOYLE & ASSOCIATES LLC
748 Ann Avenue
Kansas City, Kansas  66101
(913) 371-1930
(913) 371-0147  Facsimile
d.doyle@ddoylelaw.com
r.bruce@ddoylelaw.com
**ATTORNEYS FOR PLAINTIFF**